# EXHIBIT 1

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

| | |
|---|---|
| IN RE: AUTOMOTIVE PARTS ANTITRUST LITIGATION | Master File No. 12-md-02311 |
| | Hon. Marianne O. Battani |
| IN RE: SWITCHES CASES | |
| | 2:13-cv-01301-MOB-MKM |
| THIS RELATES TO: ALL DIRECT PURCHASER ACTIONS | 2:17-cv-12338-MOB-MKM |

<u>**SETTLEMENT AGREEMENT**</u>

This Settlement Agreement ("Agreement") is made and entered into as of the ___ day of April, 2020 ("Execution Date") by and between Nidec Mobility Corporation (formerly known as "Omron Automotive Electronics Co., Ltd.")  ("NMOJ"), and Direct Purchaser Plaintiff (as defined in Paragraph 2), both individually and on behalf of a class of direct purchasers of Power Window Switches (the "Settlement Class"), as more particularly defined in Paragraph 6 below.

WHEREAS, Direct Purchaser Plaintiff is prosecuting the above *In Re Automotive Parts Antitrust Litigation*, Master File No. 12-md-02311 (E.D. Mich.) (the "MDL Litigation") and the *Switches* case, 2:13-cv-01301, 2:17-cv-12388 (E.D. Mich.) (the "Action") on its own behalf and on behalf of the Settlement Class against, among others, NMOJ;

WHEREAS, Direct Purchaser Plaintiff alleges that it was injured as a result of NMOJ's participation in an unlawful conspiracy to raise, fix, maintain, and/or stabilize prices, rig bids, and allocate markets and customers for Power Window Switches (as defined in Paragraph 3) in violation of Section 1 of the Sherman Act as set forth in Direct Purchaser Plaintiff's Amended Class Action Complaint in the Action (the "Complaint") (Case No. 2:13-cv-01301, 2:17-cv-12388 (Doc. No. 21));

WHEREAS, NMOJ denies Direct Purchaser Plaintiff's allegations and has asserted defenses to Direct Purchaser Plaintiff's claims in the Action;

WHEREAS, arm's-length settlement negotiations have taken place between Settlement Class Counsel (as defined in Paragraph 7) and counsel for NMOJ and this Agreement has been reached as a result of those negotiations;

WHEREAS, Direct Purchaser Plaintiff, through Settlement Class Counsel, has conducted an investigation into the facts and the law regarding the Action and has concluded that resolving the claims against NMOJ, according to the terms set forth below, is in the best interests of Direct Purchaser Plaintiff and the Settlement Class because of the payment of the Settlement Amount (as defined in Paragraphs 9 and 20) and the value of cooperation (as detailed in Section J) that NMOJ has agreed to provide pursuant to this Agreement; and

WHEREAS, NMOJ, despite its belief that it is not liable for the claims asserted and its belief that it has good defenses thereto, has nevertheless agreed to enter into this Agreement to avoid further expense, inconvenience, and the distraction of burdensome and protracted litigation, and to obtain the releases, orders, and judgment contemplated by this Agreement, and to put to rest with finality all claims that have been or could have been asserted against NMOJ with respect to Power Window Switches based on the allegations in the Action, as more particularly set out below; and

NOW, THEREFORE, in consideration of the covenants, agreements, and releases set forth herein and for other good and valuable consideration, it is agreed by and among the undersigned that the Action be settled, compromised, and dismissed on the merits with prejudice as to the Releasees and except as hereinafter provided, without costs as to Direct Purchaser Plaintiff, the

Settlement Class, or NMOJ, subject to the approval of the Court, on the following terms and conditions:

A.    **Definitions**

1.    "Defendant" means, for purposes of this settlement agreement only, any or all of the following: Toyo Denso Co. Ltd., Weastec, Inc., and  Nidec Mobility Corporation.

2.    "Direct Purchaser Plaintiff" means the Settlement Class Member, as defined in Paragraph 8, who is the named plaintiff in the Complaint.

3.     "Power Window Switches" for purposes of this Agreement, has the same definition as set forth in the Complaint, specifically "switches that raise or lower an automobile's windows."

4.    "Releasees" shall refer to (i) NMOJ, (ii) Omron Corporation, (iii) all of NMOJ's or Omron Corporation's past and present direct and indirect parents, subsidiaries, affiliates, and divisions, including their respective predecessors, successors and assigns, and (iv) each and all of the present and former principals, partners, officers, directors, supervisors, employees, agents, members, representatives, insurers, attorneys, heirs, executors, administrators, and assigns of each of the persons and entities listed in (i), (ii), and (iii).    "Releasees" does not include any Defendant in the MDL Litigation other than NMOJ or any other person or entity other than those set forth in the preceding sentence of this Paragraph 4.

5.    "Releasors" shall refer to the Direct Purchaser Plaintiff and the members of the Settlement Class, as defined in Paragraph 6, below, as well as each of their parents, subsidiaries, affiliates, divisions, predecessors, successors and assigns, and their respective past and present officers, directors and employees.

6.    For purposes of this Agreement, the "Settlement Class" is defined as:

> All individuals and entities who purchased Power Window Switches in the United States directly from Defendants (or their subsidiaries or affiliates) from January 1, 2003 through the Execution Date of this Agreement. Excluded from the Settlement Class are Defendants, their present and former parent companies, subsidiaries, and affiliates, federal governmental entities and instrumentalities of the federal government, and states and their subdivisions, agencies and instrumentalities.

7.      "Settlement Class Counsel" shall refer to the following law firms: Freed Kanner London & Millen LLC, 2201 Waukegan Road, Suite 130, Bannockburn, IL 60015; Kohn, Swift & Graf, P.C., 1600 Market Street, Suite 2500, Philadelphia, PA 19103; Preti, Flaherty, Beliveau & Pachios, LLP, One City Center, P.O. Box 9546, Portland, ME 04112-9546; and Spector Roseman & Kodroff, P.C., Two Commerce Square, 2001 Market Street, Suite 3420, Philadelphia, PA 19103.

8.      "Settlement Class Member" means each member of the Settlement Class who has not timely and validly elected to be excluded from the Settlement Class.

9.      "Settlement Amount" shall be US $1,400,000, as specified in Paragraph 20.

10.     "Settlement Fund" shall refer to the Settlement Amount plus accrued interest on said amount as set forth in Paragraph 22.

**B.      Approval of this Agreement and Dismissal of Claims Against NMOJ**

11.     Direct Purchaser Plaintiff and NMOJ shall use their reasonable best efforts to effectuate this Agreement, including cooperating in seeking the Court's approval for the establishment of procedures (including the giving of class notice under Federal Rules of Civil Procedure 23(c) and (e)) to secure the complete, and final dismissal with prejudice of the Action as to the Releasees only.

12.     Direct Purchaser Plaintiff shall submit to the Court a motion seeking preliminary approval of this Agreement (the "Preliminary Approval Motion"). The Preliminary Approval

Motion shall include the proposed form of an order preliminarily approving this Agreement. Before submission, NMOJ shall have a reasonable opportunity to review and comment on the Motion and proposed order, and Direct Purchaser Plaintiff shall reasonably consider NMOJ's comments.

13.     Direct Purchaser Plaintiff, at a time to be decided in its sole discretion, shall submit to the Court a motion for authorization to disseminate notice of the settlement and final judgment contemplated by this Agreement to the Settlement Class (the "Notice Motion").  The Notice Motion shall include a proposed form of, method for, and proposed dates of dissemination of notice.  Before submission, NMOJ shall have a reasonable opportunity to review and comment on the Notice Motion, and Direct Purchaser Plaintiff shall reasonably consider NMOJ's comments.

14.     Direct Purchaser Plaintiff shall seek entry of an order and final judgment, the text of which Direct Purchaser Plaintiff and NMOJ shall agree upon, and such agreement will not be unreasonably withheld.  The terms of that proposed order and final judgment will include, at a minimum, the substance of the following provisions:

(a)     certifying the Settlement Class described in Paragraph 6, pursuant to Rule 23 of the Federal Rules of Civil Procedure, solely for purposes of this settlement as a settlement class;

(b)     as to the Action, approving finally this settlement and its terms as being a fair, reasonable and adequate settlement as to the Settlement Class Members within the meaning of Rule 23 of the Federal Rules of Civil Procedure and directing its consummation according to its terms;

(c)     as to NMOJ, directing that the Action be dismissed with prejudice and, except as provided for in this Agreement, without costs;

(d)    precluding all Settlement Class members from asserting or prosecuting any Released Claim against any Releasee;

(e)    reserving exclusive jurisdiction over the settlement and this Agreement, including the interpretation, administration and consummation of this settlement, to the United States District Court for the Eastern District of Michigan;

(f)    determining under Federal Rule of Civil Procedure 54(b) that there is no just reason for delay and directing that the judgment of dismissal in the Action as to NMOJ shall be final; and

(g)    providing that (i) the Court's certification of the Settlement Class is without prejudice to, or waiver of, the rights of any defendant, including NMOJ, to contest certification of any other class proposed in the MDL Litigation, (ii) the Court's findings in this order shall have no effect on the Court's ruling on any motion to certify any class in the MDL Litigation or on the Court's rulings concerning any defendant's motion; and (iii) no party may cite or refer to the Court's approval of the Settlement Class as persuasive or binding authority with respect to any motion to certify any such class or any defendant's motion.

15.    This Agreement shall become final when (i) the Court has entered in the Action a final order certifying the Settlement Class described in Paragraph 6 and approving this Agreement under Federal Rule of Civil Procedure 23(e) and has entered a final judgment dismissing the Action with prejudice as to NMOJ without costs other than those provided for in this Agreement, and (ii) the time for appeal or to seek permission to appeal from the Court's approval of this Agreement and entry of a final judgment as to NMOJ described in (i) hereof has expired in the Action or, if appealed, approval of this Agreement and the final judgment in the Action as to NMOJ has been affirmed in its entirety by the Court of last resort to which such appeal has been taken and such

affirmance has become no longer subject to further appeal or review.  It is agreed that the provisions of Rule 60 of the Federal Rules of Civil Procedure shall not be taken into account in determining the above-stated times.  On the date that Direct Purchaser Plaintiff and NMOJ have executed this Agreement, Direct Purchaser Plaintiff and NMOJ shall be bound by its terms and this Agreement shall not be rescinded except in accordance with Paragraph 41 of this Agreement.

16.     Neither this Agreement (whether or not it becomes final) nor the final judgment, nor any negotiations, documents, or discussions associated with them, shall be deemed or construed to be an admission by NMOJ, or evidence of any violation of any statute or law or of any liability or wrongdoing whatsoever by NMOJ, or used as evidence of the truth of any of the claims or allegations contained in any complaint or any other pleading filed in the MDL Litigation, and evidence thereof shall not be discoverable or used directly or indirectly, in any way, whether in the MDL Litigation, arbitration, or other proceeding, against NMOJ.  Neither this Agreement, any of its terms and provisions, any of the negotiations or proceedings connected with it, nor any other action taken to carry out this Agreement by NMOJ, shall be referred to, offered as evidence or received in evidence in any pending or future civil, criminal, or administrative action, arbitration, or proceedings, except in a proceeding to enforce this Agreement, or to defend against the assertion of Released Claims, or as otherwise required by law.  Nothing in this Paragraph shall prevent Direct Purchaser Plaintiff from using and/or introducing into evidence cooperation materials produced pursuant to Section J, against any other Defendants in the MDL Litigation, 12-md-02311.

**C.      Release, Discharge, and Covenant Not to Sue.**

17.     In addition to the effect of any final judgment entered in accordance with this Agreement, upon this Agreement becoming final, as set out in Paragraph 15, and in consideration of payment of the Settlement Amount, as specified in Paragraph 20, into the Escrow Account

(defined below), and for other valuable consideration, the Releasees shall be completely released, acquitted, and forever discharged from any and all claims, demands, actions, suits, causes of action, whether class, individual, or otherwise in nature (whether or not any Settlement Class Member has objected to the settlement or makes a claim upon or participates in the settlement, whether directly, representatively, derivatively or in any other capacity) under any federal, state, local, statutory, or common law of any jurisdiction in the United States, that Releasors, or each of them, ever had, now has, or hereafter can, shall, or may ever have, that now exist or may exist in the future, on account of, or in any way arising out of, any and all known and unknown, foreseen or unforeseen, suspected or unsuspected, actual or contingent, liquidated or unliquidated claims, injuries, damages, and the consequences thereof in any way arising out of or relating in any way to any conduct or omission of the Releasees prior to the Execution Date alleged in the Complaint, or in any future complaint concerning price fixing, bid rigging, or market, customer, or supply allocation of Power Window Switches, including but not limited to any conduct and causes of action alleged or asserted or that could have been alleged or asserted, in any class action or other complaint filed in the Action (the "Released Claims"), provided however, that nothing herein shall release: (1) claims based on indirect purchases of Power Window Switches; (2) claims involving any negligence, personal injury, breach of contract, bailment, failure to deliver lost goods, damaged or delayed goods, product defect, breach of product warranty, securities or other similar claim relating to Power Window Switches; (3) claims brought outside the United States relating to purchases of Power Window Switches outside the United States; (4) claims brought under laws other than those of the United States relating to purchases of Power Window Switches outside the United States; and (5) claims concerning any product other than Power Window Switches. Releasors shall not, after the date of this Agreement, seek to establish liability against any Releasee

as to, in whole or in part, any of the Released Claims unless this Agreement, for any reason, does not become final, or is rescinded or otherwise fails to become effective.

18.     In addition to the provisions of Paragraph 17 of this Agreement, Releasors hereby expressly waive and release, solely with respect to the Released Claims, upon this Agreement becoming final, as set out in Paragraph 15, any and all provisions, rights, and benefits as to their claims concerning Power Window Switches conferred by Section 1542 of the California Civil Code, which states:

> CERTAIN CLAIMS NOT AFFECTED BY GENERAL RELEASE. A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR;

or by any law of any state or territory of the United States, or principle of common law, which is similar, comparable, or equivalent to Section 1542 of the California Civil Code.  Each Releasor may hereafter discover facts other than or different from those which he, she, or it knows or believes to be true with respect to the claims which are released pursuant to the provisions of Paragraph 17, but each Releasor hereby expressly waives and fully, finally, and forever settles and releases, upon this Agreement becoming final, any known or unknown, suspected or unsuspected, contingent or non-contingent claim that NMOJ and Direct Purchaser Plaintiff have agreed to release pursuant to Paragraph 17, whether or not concealed or hidden, without regard to the subsequent discovery or existence of such different or additional facts.

19.     NMOJ and the other Releasees release any and all claims, rights or causes of action or liabilities whatsoever, whether based on federal, state, local, statutory or common law or any other law, rule or regulation, including both known claims and unknown claims (as set forth in

Paragraphs 17-18), that have been or could have been asserted in the Action or in any other action or proceeding by NMOJ or the Releasees or any of them or the successors and assigns of any of them against the Direct Purchaser Plaintiff, any Settlement Class Member, or their attorneys, which arise out of or relate to the institution, prosecution, or settlement of the Action (except for claims to enforce the terms of the Agreement).

**D.      Settlement Amount.**

20.      Subject to the provisions hereof, and in full, complete and final settlement of the Action as provided herein, NMOJ shall pay or cause to be paid the Settlement Amount.  The Settlement Amount shall be paid into an escrow account in United States Dollars to be administered in accordance with the provisions of Section E (the "Escrow Account").  NMOJ shall pay $700,000 of the Settlement Amount within thirty (30) days after the Court's preliminary approval of this Agreement, and, within thirty (30) days after the end of the period to request exclusion from the Settlement Class, shall pay the remainder of the Settlement Amount still due, if any, after accounting for all valid and timely exclusions consistent with Paragraphs 27 and 28 this Agreement.  No part of the Settlement Amount paid by NMOJ shall constitute, nor shall it be construed or treated as constituting, a payment for treble damages, fines, penalties, forfeitures, or punitive recoveries.

**E.      Escrow Account**

21.      An Escrow Account shall be maintained by Settlement Class Counsel at The Huntington National Bank.  The Escrow Account shall be administered under the Court's continuing supervision and control.

22.      All payments into the Escrow Account shall, at the direction of Settlement Class Counsel, be invested in instruments or accounts backed by the full faith and credit of the United States Government or fully insured by the United States Government or an agency thereof,

including U.S. Treasury Bills, U.S. Treasury Money Market Funds or a bank account insured by the Federal Deposit Insurance Corporation ("FDIC") up to the guaranteed FDIC limit. Any interest earned on any of the foregoing shall become part of the Settlement Fund. NMOJ shall have no responsibility for, or liability in connection with, the Settlement Fund or Escrow Account, including without limitation, the investment, administration, maintenance, or distribution thereof.

23.     The Settlement Fund held in the Escrow Account shall be deemed and considered to be in *custodia legis* of the Court, and shall remain subject to the jurisdiction of the Court, until such time as the Settlement Fund shall be distributed pursuant to this Agreement or further order(s) of the Court.

24.     Subject to the limitation set forth in Paragraph 29, reasonable disbursements for expenses associated with providing notice of the settlement to the Settlement Class, expenses for maintaining and administering the Settlement Fund, and taxes and expenses incurred in connection with taxation matters may be paid without approval from the Court and shall not be refundable to NMOJ in the event the Agreement is disapproved, rescinded, or otherwise fails to become effective, to the extent such expenses have actually been expended or incurred. Any refund that becomes owed to NMOJ if this Settlement does not become final or is rescinded or otherwise fails to become effective, may be paid out of the Escrow Account without approval from the Court. No other disbursement from or distribution of the Settlement Fund shall be made without prior approval of the Court.

25.     The Settlement Fund is intended by the parties hereto to be treated as a "Qualified Settlement Fund" within the meaning of Treasury Regulation § 1.468B-1, and to that end the parties hereto shall cooperate with each other and shall not take a position in any filing or before any tax authority that is inconsistent with such treatment. At the request of NMOJ, a "relation

back election" as described in Treasury Regulation § 1.468B-1(j) shall be made so as to enable the Settlement Fund to be treated as a qualified settlement fund from the earliest date possible, and the parties shall take all actions as may be necessary or appropriate to this end.  At the direction of Settlement Class Counsel, taxes or estimated taxes shall be paid on any income earned on the funds in the Escrow Account, whether or not final approval has occurred, as provided in Paragraph 15, above.  In the event federal or state income tax liability is finally assessed against and paid by NMOJ as a result of any income earned on the funds in the Escrow Account, NMOJ shall be entitled to reimbursement of such payment from the funds in the Escrow Account after approval of the Court and whether or not final approval has occurred. NMOJ will use reasonable efforts to resist any such assessment or payment. Except as set forth in this Paragraph, neither NMOJ, any Releasee, nor their respective counsel, shall have any responsibility to make any tax filings related to the Settlement Fund or to pay any taxes or tax expenses with respect thereto, and neither NMOJ, any Releasee, nor their respective counsel, shall have any liability or responsibility for the taxes or expenses incurred in connection with taxation matters.

26.     If this Agreement does not receive final Court approval, including final approval of the Settlement Class as defined in Paragraph 6, or if the Action is not certified as a class action for settlement purposes, then all amounts paid by NMOJ into the Settlement Fund (other than the amounts for costs expended or incurred in accordance with Paragraphs 24 and 29), shall be returned to NMOJ from the Escrow Account along with any interest accrued thereon within thirty (30) calendar days of the Court's denial of final approval of the Agreement and/or Settlement Class.

**F.**     **Exclusions**

27.     Within ten (10) days after the end of the period to request exclusion from the Settlement Class, Settlement Class Counsel will cause copies of all timely requests for exclusion

from the Settlement Class to be provided to counsel for NMOJ.  With respect to any potential Settlement Class Member who requests exclusion from the Settlement Class, NMOJ reserves all of its legal rights and defenses.

28.     The Settlement Amount is subject to reduction based on valid and timely requests for exclusion in accordance with the terms set forth in a separate, confidential letter agreement between NMOJ and the Settlement Class ("Confidential Letter Agreement").  Upon the Court's request, the Confidential Letter Agreement will be provided to the Court for an *in camera* review.

**G.      Payment of Expenses**

29.     NMOJ agrees to permit use of a maximum of US $125,000 (which limitation is effective up until the date of final approval of this settlement) of the Settlement Fund towards notice to the Settlement Class and the costs of administration of the Settlement Fund.  The notice and administration expenses are not recoverable by NMOJ if this settlement does not become final or is terminated to the extent such funds have actually been expended or the expenses have been incurred for notice and administration costs.  Other than as set forth in this Paragraph 29, and in Paragraph 24, NMOJ shall not be liable for any of the costs or expenses of the litigation of the Action, including attorneys' fees, fees and expenses of expert witnesses and consultants, and costs and expenses associated with discovery, motion practice, hearings before the Court or Special Master, appeals, trials or the negotiation of other settlements, or for class administration and costs.

30.     Within ten (10) days after the Execution Date, NMOJ will supply to Settlement Class Counsel, in an electronic mailing format, the names and addresses of putative Settlement Class Members to whom it or its subsidiaries or affiliates sold Power Window Switches during the Settlement Class Period to the extent they are identifiable through reasonable efforts, and to the extent not previously provided to Settlement Class Counsel.

H.    **The Settlement Fund**

31.    Releasors' sole recourse for settlement and satisfaction against the Releasees of all Released Claims is against the Settlement Fund, and Releasors shall have no other recovery against NMOJ or any other Releasee as to the Released Claims.

32.    After this Agreement becomes final within the meaning of Paragraph 15, the Settlement Fund shall be distributed in accordance with a plan to be submitted to the Court at the appropriate time by Settlement Class Counsel, subject to approval by the Court.  In no event shall any Releasee have any responsibility, financial obligation, or liability whatsoever with respect to the investment, distribution, or administration of the Settlement Fund, including, but not limited to, the costs and expenses of such distribution and administration except as expressly otherwise provided in Paragraphs 24 and 29 of this Agreement.

33.    Direct Purchaser Plaintiff and Settlement Class Counsel shall be reimbursed and indemnified solely out of the Settlement Fund for all expenses and costs, as provided by Court Order and the provisions of Paragraphs 24 and 29.  NMOJ and the other Releasees shall not be liable for any costs, fees, or expenses of the Direct Purchaser Plaintiff or the Settlement Class' respective attorneys, experts, advisors, agents, or representatives.  Instead, all such costs, fees, and expenses as approved by the Court, or authorized by Paragraphs 24 and 29, shall be paid out of the Settlement Fund.

I.    **Settlement Class Counsel's Attorneys' Fees, Reimbursement of Expenses, and Incentive Award for the Class Representative**

34.    Subject to Court approval, Direct Purchaser Plaintiff and Settlement Class Counsel shall be reimbursed and paid solely out of the Settlement Fund for all past, current, or future litigation costs and expenses and any award of attorneys' fees.  An incentive award to the Direct Purchaser Plaintiff, if approved by the Court, will also be paid solely out of the Settlement Fund.

Attorneys' fees and costs and expenses awarded by the Court shall be payable from the Settlement Fund upon award, notwithstanding the existence of any timely filed objections thereto, or potential appeal therefrom, or collateral attack on the settlement or any part thereof, subject to Settlement Class Counsel's obligation to make appropriate refunds or repayments to the Settlement Fund with interest, if and when, as a result of any appeal or further proceedings on remand, or successful collateral attack, the fee or award of costs and expenses is reduced or reversed, or in the event the Settlement is rescinded or otherwise fails to become effective.

35.     The procedure for and the allowance or disallowance by the Court of the application by Settlement Class Counsel for attorneys' fees, costs, and expenses, or an incentive award for the class representative to be paid out of the Settlement Fund, are not part of this Agreement, and are to be considered by the Court separately from the Court's consideration of the fairness, reasonableness and adequacy of the settlement, and any order or proceeding relating to a request for attorneys' fees and reimbursement of expenses or an incentive award, or any appeal from any such order, shall not operate to terminate or cancel this Agreement, or affect or delay the finality of the judgment approving the settlement.

36.     Neither NMOJ nor any other Releasee under this Agreement shall have any responsibility for, or interest in, or liability whatsoever with respect to any payment to Settlement Class Counsel and/or Direct Purchaser Plaintiff of any fee and expense award, or incentive award, in the Action.

37.     Neither NMOJ nor any other Releasee under this Agreement shall have any responsibility for, or interest in, or liability whatsoever with respect to the allocation among Settlement Class Counsel, and/or any other person who may assert some claim thereto, of any fee and expense award that the Court may make in the Action.

**J.**   **Cooperation**

38.   NMOJ will provide reasonable cooperation to the Direct Purchaser Plaintiff by providing targeted documents and other information Direct Purchaser Plaintiff may need to pursue its claims against other Power Window Switches Defendants.  The scope of that cooperation will be determined at the time it is requested, but may include reasonably tailored requests for documents, attorney proffers, depositions and witness interviews.   All cooperation shall be coordinated to avoid all unnecessary duplication and expense and shall not impose undue burden and expense on NMOJ to the extent practicable.

39.   NMOJ shall have no obligation to provide any cooperation before the sixtieth (60th) day after the Court grants preliminary approval of this Agreement.

40.   Notwithstanding anything contained herein, Direct Purchaser Plaintiff and the Settlement Class are not relinquishing any rights to pursue discovery against NMOJ  in the event that this Agreement fails to receive final approval by the Court, including final approval of the Settlement Class, as defined in Paragraph 6, or in the event that it is terminated by either party under any provision herein.

**K.**   **Rescission if this Agreement is Not Approved or Final Judgment is Not Entered.**

41.   If the Court refuses to approve this Agreement or any part hereof, including if the Court does not certify the Settlement Class in accordance with the specific Settlement Class definition set forth in Paragraph 6 of this Agreement, or if such approval is modified or set aside on appeal, or if the Court does not enter the final judgment provided for in Paragraph 14, or if the Court enters the final judgment and appellate review is sought, and on such review, such final judgment is not affirmed in its entirety, then NMOJ and Direct Purchaser Plaintiff shall each, in their sole discretion, have the option to rescind this Agreement in its entirety.  The provisions of Paragraphs 24 and 29 of this Agreement shall remain in effect in the event this Agreement is

rescinded.  Written notice of the exercise of any such right to rescind shall be made according to the terms of Paragraph 52.  A modification or reversal on appeal of any amount of Settlement Class Counsel's fees and expenses awarded by the Court from the Settlement Fund shall not be deemed a modification of all or a part of the terms of this Agreement or such final judgment.

42.     In the event that this Agreement does not become final as set forth in Paragraph 15, or this Agreement otherwise is terminated, then this Agreement shall be of no force or effect and any and all parts of the Settlement Fund caused to be deposited in the Escrow Account (including interest earned thereon) shall be returned forthwith to NMOJ less only disbursements made, or the amount of obligations incurred in accordance with Paragraphs 24 and 29.  NMOJ expressly reserves all rights and defenses if this Agreement does not become final.

43.     Further, and in any event, Direct Purchaser Plaintiff and NMOJ agree that this Agreement, whether or not it shall become final, and any and all negotiations, documents, and discussions associated with it, shall not be deemed or construed to be an admission or evidence of (i) any violation of any statute or law or of any liability or wrongdoing whatsoever by NMOJ, or the other Releasees, and shall not be used against NMOJ or the Releasees, or of (ii) the truth of any of the claims or allegations contained in the Complaint or any other pleading filed in the MDL Litigation, and shall not be used against NMOJ or the other Releasees, and evidence thereof shall not be discoverable or used in any way, whether in the MDL Litigation or in any other action or proceeding, against NMOJ or the Releasees.

44.     This Agreement shall be construed and interpreted to effectuate the intent of the parties, which is to provide, through this Agreement, for a complete resolution of the relevant claims with respect to NMOJ as provided in this Agreement in exchange for the payment of the Settlement Amount and cooperation by NMOJ.

**L.**   **Miscellaneous.**

45.   NMOJ shall submit all materials required to be sent to appropriate Federal and State officials pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1715.

46.   This Agreement does not settle or compromise any claim by Direct Purchaser Plaintiff or any Settlement Class Member asserted in the Complaint or, if amended, any subsequent complaint, against any Defendant or alleged co-conspirator other than Releasees.  All rights against such other Defendants or alleged co-conspirators are specifically reserved by Direct Purchaser Plaintiff and the Settlement Class.  All rights of any Settlement Class Member against any and all former, current, or future Defendants or co-conspirators or any other person other than Releasees for sales made by Releasees relating to alleged illegal conduct are specifically reserved by Direct Purchaser Plaintiff and Settlement Class Members.  NMOJ's and the other Releasees' sales to the Settlement Class and their alleged illegal conduct shall, to the extent permitted or authorized by law, remain in the Action as a potential basis for damage claims and shall be part of any joint and several liability claims against other current or future Defendants in the Action or other persons or entities other than Releasees.  Releasees shall not be responsible for any payment to Direct Purchaser Plaintiff other than the Settlement Amount and the amounts specifically agreed to in Paragraphs 24 and 29.

47.   The United States District Court for the Eastern District of Michigan shall retain jurisdiction over the implementation, interpretation, enforcement, and performance of this Agreement, and shall have exclusive jurisdiction over any suit, action, proceeding, or dispute arising out of or relating to this Agreement or the applicability of this Agreement that cannot be resolved by negotiation and agreement by Direct Purchaser Plaintiff and NMOJ, including challenges to the reasonableness of any party's actions.  This Agreement shall be governed by and interpreted according to the substantive laws of the state of Michigan without regard to its choice

of law or conflict of laws principles.  NMOJ will not object to complying with any of the provisions outlined in this Agreement on the basis of jurisdiction.

48.     This Agreement and the Confidential Letter Agreement between NMOJ and the Settlement Class, as described in Paragraph 28, constitutes the entire, complete and integrated agreement between Direct Purchaser Plaintiff and NMOJ pertaining to the settlement of the Action against NMOJ, and supersede all prior and contemporaneous undertakings, communications, representations, understandings, negotiations and discussions, either oral or written, between Direct Purchaser Plaintiff and NMOJ in connection herewith.  This Agreement may not be modified or amended except in writing executed by Direct Purchaser Plaintiff and NMOJ, and approved by the Court.

49.     This Agreement shall be binding upon, and inure to the benefit of, the successors and assigns of Direct Purchaser Plaintiff and NMOJ.  Without limiting the generality of the foregoing, upon final approval of this Agreement, each and every covenant and agreement made herein by Direct Purchaser Plaintiff or Settlement Class Counsel shall be binding upon all Settlement Class Members and Releasors.  The Releasees (other than the NMOJ entities that are parties hereto) are third-party beneficiaries of this Agreement and are authorized to enforce its terms applicable to them.

50.     This Agreement may be executed in counterparts by Direct Purchaser Plaintiff and NMOJ, and a facsimile or Portable Document Format (.pdf) signature shall be deemed an original signature for purposes of executing this Agreement.

51.     Neither Direct Purchaser Plaintiff nor NMOJ shall be considered to be the drafter of this Agreement or any of its provisions for the purpose of any statute, case law, or rule of

interpretation or construction that would or might cause any provision to be construed against the drafter of this Agreement.

52.     Where this Agreement requires either party to provide notice or any other communication or document to the other, such notice shall be in writing, and such notice, communication or document shall be provided by facsimile, or electronic mail (provided that the recipient acknowledges having received that email, with an automatic "read receipt" or similar notice constituting an acknowledgement of an email receipt for purposes of this Paragraph), or letter by overnight delivery to the undersigned counsel of record for the party to whom notice is being provided.

53.     Each of the undersigned attorneys represents that he or she is fully authorized to enter into the terms and conditions of, and to execute, this Agreement subject to Court approval.

Date: April 13th, 2020

Steven A. Kanner
William H. London
Michael E. Moskovitz
FREED KANNER LONDON & MILLEN LLC
2201 Waukegan Road, Suite 130
Bannockburn, IL 60015
Telephone: (224) 632-4500

Joseph C. Kohn
William E. Hoese
Douglas A. Abrahams
KOHN, SWIFT & GRAF, P.C.
1600 Market Street, Suite 2500
Philadelphia, PA 19103
Telephone: (215) 238-1700

_(signature)_

Gregory P. Hansel
Randall B. Weill
Michael S. Smith
PRETI, FLAHERTY, BELIVEAU
& PACHIOS LLP
One City Center, P.O. Box 9546
Portland, ME 04101
Telephone: (207) 791-3000

Eugene A. Spector
William G. Caldes
Jeffrey L. Spector
SPECTOR ROSEMAN & KODROFF, P.C.
2001 Market Street, Suite 3420
Philadelphia, PA 19103
Telephone: (215) 496-0300

*Interim Co-Lead Class Counsel and Settlement Class Counsel*

_(signature)_

Jeremy J. Calsyn
Clearly Gottlieb Steen & Hamilton LLP
2112 Pennsylvania Avenue, N.W.
Washington, D.C. 20037
Telephone: (202) 974-1522

*Counsel for Nidec Mobility Corporation* (formerly known as "Omron Automotive Electronics Co., Ltd.")

Gregory P. Hansel
Randall B. Weill
Michael S. Smith
PRETI, FLAHERTY, BELIVEAU
& PACHIOS LLP
One City Center, P.O. Box 9546
Portland, ME 04101
Telephone: (207) 791-3000

Eugene A. Spector
William G. Caldes
Jeffrey L. Spector
SPECTOR ROSEMAN & KODROFF, P.C.
2001 Market Street, Suite 3420
Philadelphia, PA 19103
Telephone: (215) 496-0300

*Interim Co-Lead Class Counsel and Settlement Class Counsel*

Jeremy J. Calsyn
Clearly Gottlieb Steen & Hamilton LLP
2112 Pennsylvania Avenue, N.W.
Washington, D.C. 20037
Telephone: (202) 974-1522

*Counsel for Nidec Mobility Corporation* (formerly known as "Omron Automotive Electronics Co., Ltd.")